# CRIMINAL COMPLAINT

## Affidavit

I, James A. Thomas, being duly sworn, depose and state as follows:

**Background of Affiant**

1. I, James A. Thomas, am a Police Officer with the City of Virginia Beach Police Department. I have been employed in this capacity since September of 1990. During the past twenty-one years of service, I have worked as a narcotic detective with Special Investigations to include over eleven years as a deputized Task Force Officer with the United States Department of Justice Drug Enforcement Administration, in Norfolk, Virginia. During the course of my law enforcement experience, I have received extensive training emphasizing drug identification, distribution techniques, and methods of narcotic investigations and enforcement.

2. This affiant is familiar with the facts and circumstances surrounding the investigation of Brian Lee GOFFIGAN. This affiant has reviewed reports of the Virginia Beach Police Department related to the investigations of Brian GOFFIGAN. This affiant has compiled information derived from these reports and participated in additional discussions about the investigations of Brian GOFFIGAN with Virginia Beach Police Department Narcotic Detectives. This affidavit contains a probable cause statement to support the issuance of an arrest warrant for the offense of Possession of Cocaine Base with the Intent to Distribute and does not contain all the information known to this affiant regarding the investigations. Based upon this affiant's experience and training, as well as the investigations up to this point, this affiant knows the following.

**Facts Supporting Probable Cause**

3. In August of 2015, Narcotics Detectives of the Virginia Beach Police Department received information from a confidential and reliable informant, hereinafter referred to as CI #1, that Brian GOFFIGAN was distributing crack cocaine in Virginia Beach, VA.[1] Through investigative means the detectives positively identified Brian GOFFIGAN and identified locations that Brian GOFFIGAN frequented when Brian GOFFIGAN was actively involved with the distribution of crack cocaine. During the investigation, it was learned that Brian GOFFIGAN lived at                                      , Virginia Beach, VA with his girlfriend, unindicted coconspirator #1, hereinafter referred to as UCC #1.[2]

---

[1] Subsequent to the events described in this affidavit, the informant was arrested for prescription fraud in Virginia Beach. This arrest was based on the informant's own alleged conduct, not any facts he had supplied to law enforcement regarding others' activities. The prescription fraud charged was subsequently nolle prosequi based on insufficient investigation.

[2] UCC #1 was charged in the City of Virginia Beach with Conspiracy to Violate the Drug Control Act. UCC #1

4. In August of 2015 and September of 2015, Virginia Beach Detectives utilized CI #1 to make four (4) separate controlled purchases of crack cocaine from Brian GOFFIGAN in the City of Virginia Beach, VA. During the controlled purchases, Detectives maintained control of CI #1 and directed his/her activities as he/she purchased crack cocaine from Brian GOFFIGAN.

5. On August 29, 2015, Virginia Beach Detectives conducted surveillance on Brian GOFFIGAN beginning at                                , Virginia Beach, VA. Detectives observed Brian GOFFIGAN and UCC #1 depart from                                and drive to the Kempsville Lakes area of Virginia Beach, VA. The vehicle was driven by UCC #1 with Brian GOFFIGAN as the front seat passenger. UCC #1 and Brian GOFFIGAN drove to the dead end of Weller Boulevard where they met in the roadway with an unidentified individual in a vehicle that was waiting for them. The meeting lasted approximately one minute, and was consistent with that of a narcotics transaction.

6. Detectives then followed UCC #1 and Brian GOFFIGAN to the Walmart located at 3201 Holland Road in Virginia Beach, VA. UCC #1 circled the parking lot one time, and then pulled up to a blue Mitsubishi sedan, parked in the lot. The unidentified male driver of the Mitsubishi sedan got out of his vehicle and leaned into the passenger window where Brian GOFFIGAN was seated and made an exchange. The meeting lasted approximately one minute, and was consistent with that of a narcotics transaction. After the meeting concluded, both vehicles departed in opposite directions.

7. Detectives continued to follow UCC #1 and Brian GOFFIGAN as they left the area and travelled to Loretta Lane located near the Virginia Beach oceanfront area. Detectives observed UCC #1 and Brian GOFFIGAN stop and pick up an individual that is a known narcotics abuser. Detectives observed UCC #1 and Brian GOFFIGAN drive the individual across the street to Birdneck Road, where he exited the car then walked on foot to a known homeless camp in the nearby woods. The meeting lasted approximately one minute, and was consistent with that of a narcotics transaction.

8. Detectives followed UCC #1 and Brian GOFFIGAN after they left the oceanfront area. At this point, UCC #1 and Brian GOFFIGAN travelled to                                , Virginia Beach, Virginia. Detectives observed both UCC #1 and Brian GOFFIGAN exit from their vehicle and enter into the residence. A short time later, both UCC #1 and Brian GOFFIGAN exited the apartment and detectives observed UCC #1 place a white bag into the rear of the vehicle. Detectives observed Brian GOFFIGAN reentered the apartment with a white bag in his hand. Shortly thereafter, detectives observed Brian GOFFIGAN exit from the apartment empty handed and enter the vehicle with UCC #1. This meeting was also very brief and was consistent with that of a narcotics transaction.

9. Detectives then followed UCC #1 and Brian GOFFIGAN to the Taco Bell restaurant located in the 3200 block of Holland Road. Detectives observed UCC #1 park the vehicle

---

was ultimately found not guilty of that offense.

in the middle of the parking lot for a brief period of time, and then leave without meeting with anyone. Detectives followed UCC #1 and Brian GOFFIGAN to another Taco Bell restaurant, located in the Town Center area of Virginia Beach. UCC #1 parked the vehicle and detectives observed Brian GOFFIGAN exit from the vehicle and walk into the bathroom of the Taco Bell restaurant. Detectives observed Brian GOFFIGAN and another unidentified male exiting the bathroom within seconds of Brian GOFFIGAN entering. Detectives observed both Brian GOFFIGAN and the unidentified male leave the parking lot in separate vehicles. The very brief time that Brian GOFFIGAN spent in the restroom combined with Brian GOFFIGAN and the other man exiting within seconds of one another was consistent with a narcotics transaction.

10. On September 10, 2015, Detectives continued conducting surveillance on _____ Virginia Beach, VA. Detectives observed Brian GOFFIGAN exit the residence and get into the front passenger seat of a black Saturn 4 door sedan parked in the parking lot of _____. The vehicle was being driven by a female, unindicted coconspirator #2, hereinafter referred to as (UCC #2). Detectives maintained surveillance on UCC #2 and Brian GOFFIGAN and observed their vehicle turn onto Dahlia Drive and stop in front of _____. Detectives observed a male come from the residence and walk to the passenger side of the vehicle where Brian GOFFIGAN was seated. The male leaned into the passenger window and detectives observed the male hand Brian GOFFIGAN something and then the male reached his hand further into the vehicle out of the view of the detectives. The male was at the passenger window for approximately a minute or two and then walked away from the vehicle and immediately put his hand in his pocket as though he was attempting to conceal what was just exchanged. Detectives believed that through their training and experience, this exchange was consistent with a narcotics transaction. The male walked back to the residence and went inside. UCC #2 and Brian GOFFIGAN drove away and detectives continued to follow them.

11. As surveillance continued, detectives observed UCC #2 and Brian GOFFIGAN drive to the _____ Condominiums in Virginia Beach. Detectives observed Brian GOFFIGAN go towards the rear of the condominium complex. Detectives had previously received information from a reliable and confidential informant that UCC #3 lived at _____ and that UCC #3 sells cocaine that was being supplied by Brian GOFFIGAN. Detectives were also aware that UCC #3 had been previously convicted of Possession with Intent to Distribute Cocaine in Virginia Beach. Detectives noted that Brian GOFFIGAN's visit at _____ Condominiums was only for approximately five (5) minutes and then he left with UCC #2.

12. As surveillance continued, Detectives followed UCC #2 and Brian GOFFIGAN into the parking lot of the Hardees restaurant, located at 3342 Virginia Beach Boulevard, Virginia Beach, VA. Detectives observed UCC #2 park the vehicle in a parking space next to a pickup truck. Detectives observed a male get out of the pickup truck and walk to the passenger side of the vehicle where Brian GOFFIGAN was seated. Detectives observed the male lean into the passenger window of the vehicle and make what appeared to be an

3

exchange. The male was at Brian GOFFIGAN'S passenger side window for approximately one or two minutes. The male then got back into the pickup truck and both the pickup truck and UCC #2 drove out of the lot. Through the detective's training and experience, they believed that this exchange was consistent with that of a narcotics transaction.

13. Detectives then followed UCC #2 and Brian GOFFIGAN as their vehicle pulled into the parking lot of the Citgo Gas Station located at 3996 Bonney Road and parked at the right end of the store. Brian GOFFIGAN exited the vehicle and entered the store for a short period of time. Detectives maintained surveillance on Brian GOFFIGAN as he exited the store. Detectives approached Brian GOFFIGAN and attempted to detain him based on their earlier observations of the suspected hand to hand transactions and the four (4) controlled purchases of crack cocaine conducted by CI #1 with Brian GOFFIGAN. Brian GOFFIGAN fled on foot and detectives gave chase and arrested Brian GOFFIGAN a short distance away. Detectives conducted a search incident to arrest and recovered what later tested positive as 6.7976 grams of crack cocaine from Brian GOFFIGAN'S pants pocket. Detectives transported Brian GOFFIGAN to Virginia Beach Police Headquarters, 2509 Princess Anne Road, Virginia Beach, VA. Prior to placing Brian GOFFIGAN into an interview room, detectives recovered what later tested positive as 21.72 grams of crack cocaine from the crotch area inside of Brian GOFFIGAN'S pants. The above-described substances were all submitted to the Virginia Department of Forensic Science and tested as the drug types and weights stated herein. The total crack cocaine weight described above is 28.5176 grams. UCC #2 was subsequently arrested and charged with conspiracy to distribute crack cocaine. UCC #2 was ultimately convicted of that offense in the Virginia Beach Circuit Court.

14. Based on the foregoing, this affiant believes there is probable cause to believe Brian Lee GOFFIGAN violated Title 21, United States Code, Section 841 (a)(1) and (b)(1)(B), Possession with the Intent to Distribute 28 Grams or More of a Mixture and Substance Containing Cocaine Base, and I request an arrest warrant be issued. The incidents described in this affidavit occurred in the Eastern District of Virginia. This affidavit does not contain all of the information that this affiant knows about this investigation.

James A. Thomas<br>
DEA Task Force Officer

Reviewed and Approved:

*/s/ K. H.*

Kevin Hudson
Assistant United States Attorney

Sworn to and Subscribed before me on this _____ day of April 2016.

_____

Robert J. Krask
United States Magistrate Judge
at Norfolk, Virginia